Opinion to: SR TJ EVK ERA GCH LCH JB JS MM TGT

















Opinion issued July 15,
2010.

 

                                                                                                                                                                                                                                                                                                                                                            



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO.   01-09-00693-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



Priscilla
celestine, Appellant

 

V.

 

Department of
Family and Protective Services, Appellee

 

On Appeal from the 313th District Court

Harris County,
Texas

Trial Court Cause No. 2007-29969

 



o p i n i o n

Appellant, Priscilla Celestine,
appeals the dismissal of her petition for adoption and the trial court’s denial
of her motion for new trial.  We affirm
the judgment of the trial court.

BACKGROUND

On August 29, 2006, the 313th Judicial District Court of Harris
County issued a final decree terminating the parental rights of DDD’s, DJD’s,
JID’s and CRD’s biological parents and appointing the Department of Family and
Protective Services (DFPS) as the children’s sole managing conservator.[1]  DFPS had placed the children with Celestine
while the termination proceeding was pending. 
In December 2006, DFPS removed the children from Celestine’s home after
a caseworker learned that Celestine had left the children alone with their
biological mother.[2]  It is undisputed that the children had only
lived with Celestine for five and a half months prior to their removal.  

On May 17, 2007—five months after the children were removed from
her home—Celestine,
claiming to be a maternal aunt to two of the children, filed a petition to terminate
DFPS’s conservatorship and adopt all four children.[3]  Although Celestine attempted to file her petition for
adoption under cause number 2005-03847J (termination proceeding), the clerk’s
office corrected the error and assigned Celestine’s petition a new cause number, 2007-29969.[4]  Celestine subsequently filed three amended
petitions.[5]
 DFPS responded to all three by filing
general denials and special exceptions asserting that Celestine failed to plead any facts that would establish that she had
standing to bring the suit.  In its
response to Celestine’s Third Amended Petition, DFPS also moved to
strike the pleadings.  After a hearing
before Associate Judge
Robert Molder of the 313th Judicial District Court, DFPS’s motion to
strike was denied.[6]  DFPS subsequently filed its First Amended
Answer to Celestine’s Third Amended Petition. 
In its amended answer, DFPS stated that, as the children’s Sole Managing
Conservator, it did not consent to Celestine’s adoption of the children and,
furthermore, that waiver of consent was not authorized because DFPS had good
cause to refuse consent.  

For
reasons not fully explained by either the briefs or the clerk’s record in this
matter, Celestine’s petition came before Judge Frank Rynd,
presiding judge of the 309th District Court of Harris County.[7]  Celestine argues in her supplemental brief
that the District Clerk’s office must have erroneously assigned her case to the
309th District Court when it assigned her petition a new cause number,
2007-29969.  On August 25, 2008, Judge Rynd
signed an order of dismissal for want of prosecution under the corrected cause
number and style of Celestine’s petition for adoption.  The order of dismissal, which was filed with
the District Clerk’s office on August 27, 2008, indicates that neither
Celestine nor her counsel appeared on April 25, 2008 for a trial on the
merits.  No motion to reinstate was filed
with respect to Judge Rynd’s order.

Despite
Judge Rynd’s order of dismissal, a hearing on
Celestine’s petition for adoption was held on October 1, 2008 before Associate
Judge Robert Molder of the 313th Judicial District Court, presided over by
Judge Pat Shelton.[8]  After the hearing, the 313th District Court
signed an order dismissing Celestine’s petition with prejudice, and without
explanation.  Celestine promptly filed a
motion for new trial before the 313th District Court, which, after a hearing,
was also denied without explanation.  Celestine
now appeals the October 2008 order of the 313th District Court dismissing her
petition for adoption and the subsequent denial of her motion for new
trial/reconsideration.

 

Subject
Matter Jurisdiction

As a preliminary matter, we must
determine whether the 313th District Court had jurisdiction to enter the
October 1, 2008 order of dismissal.  DFPS
argues that the October 1, 2008 order of dismissal—the only order of dismissal
Celestine is appealing—was appropriate because the case had already been
dismissed on August 25, 2008 for want of prosecution by Judge Rynd, the presiding Judge of the 309th District Court, who
was sitting on behalf of the 313th District Court, pursuant to the
exchange-of-benches doctrine.  According
to DFPS, by the time Associate Judge Molder heard the motion to dismiss on
October 1, 2008, the 313th District Court’s plenary power had already expired,
thus depriving the court of jurisdiction over the case.  Celestine, on the other hand, argues that Judge
Rynd was not acting on behalf of the 313th District
Court, as DFPS contends, but, instead, was acting on behalf of the 309th
District Court because the District Clerk’s office had erroneously assigned her
petition to Judge Rynd’s court, the 309th District
Court.  According to Celestine, the 309th
District Court did not have jurisdiction to dismiss her petition for adoption
because the 313th District Court was the court of continuing and exclusive
jurisdiction.  Although she does not
expressly state as much, we understand the remainder of her argument to be that
the August 25, 2008 order issued by Judge Rynd was
void for want of jurisdiction (rather than merely “voidable”); therefore, the district
court’s plenary power had not expired by the time Associate Judge Molder
dismissed her petition, and Associate Judge Molder could not have properly
dismissed her petition on that basis.

Exchange
of Benches Doctrine

The Texas Constitution and Government
Code give district courts broad discretion to exchange benches
and enter orders on other cases in the same county, even without a formal order
memorializing the exchange or transfer.  In re U.S. Silica Co.,
157 S.W.3d 434, 439 (Tex. 2005); Tex. Const. art. V, §
11 (“[T]he District Judges may exchange districts, or hold courts for each
other when they may deem it expedient”); Tex. Gov’t Code Ann. §
74.094(a) (Vernon 2005) (stating that district court judges may “hear and
determine a matter pending in any district or statutory county court in the county
regardless of whether the matter is preliminary or final or whether there is a
judgment in the matter.  The judge may
sign a judgment or order in any of the courts regardless of whether the case is
transferred.  The judgment, order, or
action is valid and binding as if the case were pending in the court of the
judge who acts in the matter.”); Tex. Gov’t Code Ann. § 24.303(a) (Vernon 2004) (allowing
district court judges in multi-court counties to transfer any civil or criminal
matters on their docket to another district court in the same county and to “exchange
benches or districts from time to time”). 
The Texas Rules of Civil Procedure further enforce this rule.  In counties with more than one district
court, “any judge may hear any part of any case.”  See Tex.
R. Civ. P. 330(g).
 And Rule 330(h) provides that in such
counties, “any judge may hear . . . all preliminary matters, questions and
proceedings and may enter judgment or order thereon in the court in which the
case is pending without having the case transferred to the court of the judge
acting. . . . Any judgment rendered or action taken by any judge in any of said
courts in the county shall be valid and binding.”  Tex. R. Civ. P. 330(h).  

Although the Texas Family Code
contains a unique provision giving a court continuing and exclusive
jurisdiction over matters involving the welfare of a child upon the rendition
of a final order in an original suit affecting a parent-child relationship, see Tex.
Fam. Code Ann.
§ 155.001 (Vernon
2008), this does not preclude the application of the exchange-of-benches
doctrine in such cases.  See In re Garza, 981 S.W.2d 438, 441
(Tex. App.—San Antonio 1998, orig. proceeding) (holding that when district
court has continuing and exclusive jurisdiction over SAPCR matter, judge of
another district court in same county may rule in matter, so long as record is
clear that judge is acting on behalf of court with continuing and exclusive
jurisdiction). 

It is undisputed that the 313th Judicial
District Court has exclusive and continuing jurisdiction in the present case by
virtue of the fact that it issued the final order in the termination proceeding.  See
Tex. Fam. Code Ann. § 155.001.  If Judge Rynd was
acting on the behalf of the 313th, the court of continuing and exclusive
jurisdiction—rather than acting on the behalf of the 309th—there would be no
question that the August 25, 2008 order he signed dismissing Celestine’s
petition for want of prosecution was valid and enforceable as an order of the
313th District Court.  Thus, the initial issue
before this Court is whether the record demonstrates that Judge Rynd was acting on behalf of the 309th or the 313th District
Court when he issued his order dismissing Celestine’s petition.

The August 25, 2008 order dismissing Celestine’s
petition was signed by Judge Rynd in his capacity as
“Judge.”  The order’s caption suggests that
the matter was pending before the 309th District Court.  The District Clerk’s record also contains
docket sheets indicating that Celestine’s adoption case may have been mistakenly
assigned to the 309th District Court when the District Clerk’s office assigned her
petition for adoption a new cause number, 2007-29969.  Moreover, docket sheets from the 313th
District Court, which are also contained in the District Clerk’s record, indicate
that the 313th was docketing activities relating to Celestine’s adoption petition
under the 2005 case number assigned to the termination proceeding rather than
under the 2007 case number assigned to the adoption proceeding.  Standing alone, not one of these facts would
be sufficient to conclusively defeat DFPS’s contention that the order resulted
from a proper exchange of benches because any one of them could have resulted
from a simple clerical error.  Nevertheless,
these facts, coupled with the subsequent conduct of the 313th District Court,
the court of continuing and exclusive jurisdiction, and the conduct of the
parties, demonstrate that Judge Rynd was not acting
on behalf of the 313th when he issued the August 25, 2008 order dismissing
Celestine’s adoption petition for want of prosecution. 


The record in this matter demonstrates
that Associate Judge Molder, who was acting on behalf of Judge Shelton of the
313th District Court, and the parties continued to proceed with the case in the
313th District Court as if Judge Rynd’s order of
dismissal had never happened.  First, the
313th District Court scheduled Celestine’s petition for a trial on merits on
October 1, 2008—over a month after Judge Rynd issued
his order of dismissal.[9]  Second, when the parties appeared before Associate
Judge Molder on October 1, the attorney ad litem asked
the court to dismiss Celestine’s petition because Celestine acknowledged that
she did not meet the Family Code’s requirement that the children must have
resided with her for six months prior to adoption; Associate Judge Molder held
an impromptu hearing on the issue.  Although
they discussed the procedural history of the case at the October 1 hearing,
neither the parties nor Associate Judge Molder made any mention of Judge Rynd’s order of dismissal for want of prosecution or of the
April 2008 trial in the 309th at which Celestine and her counsel failed to
appear, providing the grounds for Judge Rynd’s dismissal.  Finally, neither the parties nor Associate Judge
Molder made any mention of Judge Rynd’s order of
dismissal when Associate Judge Molder presided over a hearing on Celestine’s
motion for new trial almost a month later on October 29, 2008.  Under these circumstances, we cannot say that
it is clear from the record that Judge Rynd was
acting on behalf of the 313th District Court—the court with continuing and
exclusive jurisdiction.  See In
re Garza, 981 S.W.2d at 441; see
also Alexander v. Russell, 699 S.W.2d 209, 210 (Tex. 1985) (requiring
record in SAPCR cases to “show that the court with continuing and exclusive
jurisdiction was actually the court which exercised jurisdiction”).  Accordingly, we determine that Judge Rynd was acting on behalf of the 309th District Court when
he dismissed Celestine’s petition for adoption.

Continuing
and Exclusive Jurisdiction

Having determined that Judge Rynd issued the August 25, 2008 order dismissing
Celestine’s petition on behalf of the 309th District Court, we must now
determine whether the 309th had jurisdiction over the matter.  As a district court in Harris County, the
309th ordinarily has jurisdiction over adoption proceedings.  See
Tex. Const. art. V, § 8 (“District Court
jurisdiction consists of exclusive, appellate, and original jurisdiction of all
actions, proceedings, and remedies, except in cases where exclusive, appellate,
or original jurisdiction may be conferred by this Constitution or other law on
some other court, tribunal, or administrative body.”); Tex. Gov’t. Code Ann. § 24.601(b) (Vernon
2004) (stating that “family district courts” have primary responsibility for cases involving family law matters, including
adoptions and other suits affecting parent-child relationship); Tex. Gov’t. Code Ann. §§ 24.607,
24.617, 24.621 (Vernon 2004) (identifying 309th and 313th as family district
courts); see also Tex. Govt. Code Ann. § 24.601(a)
(Vernon 2004) (stating that family district court’s
“jurisdiction is concurrent with that of other district courts in the county in
which it is located”).

The question before this Court now is
whether the 313th District Court’s exclusive and continuing jurisdiction over
the children deprived the 309th District Court of jurisdiction in this particular
case, as Celestine contends.  Although
this is a matter of first impression for this Court, we note that the other
courts of appeals that have already addressed this issue disagree as to whether
the Family Code’s continuing and exclusive jurisdiction provision is truly
jurisdictional or merely a matter of dominant jurisdiction, more closely akin
to the rules of venue.  Compare Ramsey v. Ramsey, 19 S.W.3d 548,
551–56 (Tex. App.—Austin 2000, no pet.) (conservatorship provisions of divorce
decree rendered by different court from one that had rendered earlier SAPCR
order were not void and thus not vulnerable to collateral attack) with In
re Aguilera, 37 S.W.3d 43, 49, 52–53 (Tex. App.—El Paso 2000, orig.
proceeding) (stating that concept is truly jurisdictional; holding order issued
by one district court void for want of jurisdiction when another district court
in same county had continuing and exclusive jurisdiction over matter).

The Fort Worth Court of Appeals
addressed a similar issue in Carroll v.
Couch, 624 S.W.2d 398 (Tex. App.—Fort Worth 1981, no writ).  Although the court of appeals in Carroll never expressly reached the ‘void’
versus ‘voidable’ issue because the appellant challenged the order on direct
appeal rather than by collateral attack, the court’s analysis suggests that the
court would be likely to agree with the El Paso Court of Appeals’ conclusion
that such orders are void.  In Carroll, the court of appeals reversed a
Wichita County court’s judgment terminating a father’s parental rights after
the court of appeals determined that a Tarrant County court had continuing and
exclusive jurisdiction over the children by virtue of a divorce decree it had
issued years earlier.  See id. at
398–99.  The court of appeals also
determined that while the Tarrant County court was required to transfer the
case to the Wichita County court if requested to do so, because the children
resided in Wichita County at the time the case was filed, no request for
transfer was ever made.  See id. 
As a result, the matter was never transferred to the Wichita County
court.  See id.  The court of appeals
further reasoned that because the Tarrant County court remained the court of
continuing and exclusive jurisdiction, the Wichita County court did not have
jurisdiction in the case when it issued the order terminating the father’s
parental rights.  See id. at 399.  

After reviewing the cases and
arguments supporting both sides of the issue, we determine that the Family
Code’s continuing and exclusive jurisdiction provision is a matter of true
jurisdiction.  Thus, when one court has continuing
and exclusive jurisdiction over a matter, any order or judgment issued by another
court pertaining to the same matter is void. 
This position best comports with the legislative philosophy behind the Family
Code’s exclusive and continuing jurisdiction provisions, which have been
described as follows:

Recognizing the need to commit the decision of all
controversies that directly affect the welfare of particular children to a
single court, the legislature enacted section [155.001] providing for
continuing jurisdiction.  Before the
passage of section [155.001], conflicts between courts of parallel jurisdiction
had led to multiple suits concerning the proper disposition of issues affecting
children.  Consolidation of the various
suits into one suit affecting the parent-child relationship and investing only
one court with power to rule on issues affecting the child provides an effective
way to give courts access to more information and leaves them wide latitude in
dealing with the best interests of the child.

 

In re Miller,
583 S.W.2d 872, 873 (Tex. Civ. App.—Dallas 1979, no writ); see also Trader v. Dear,
565 S.W.2d 233, 235 (Tex. 1978) (“The Legislature by enacting the Family Code adopted
a scheme for handling parent-child matters in a manner that avoids forum
shopping, races to the courthouse, child snatching, and the harassment of a
parent by the other parent’s filing suits in random courts”); In re Garza,
981 S.W.2d at 442 (J. Rickoff, concurring) (“Before
the Legislature enacted the continuing, exclusive jurisdiction provisions,
suits affecting one child were decided by various judges in various courts,
with the effect that ‘[j]udges passing on some facet
of a child’s welfare were cast into the position of a blind man touching and
describing an elephant.  [I]nvesting only one court with power to rule on issues
affecting the child was predicted to be an effective way to give courts access
to more information and leave them the widest latitude in dealing with the
child’s best interests.’”) (citations omitted).  Accordingly, we determine that the 309th
District Court did not have jurisdiction when it dismissed Celestine’s petition
for adoption because the 313th District Court had continuing and exclusive
jurisdiction over the children.  Thus,
the August 25, 2008 order attempting to dismiss Celestine’s petition is void. 

Standing

This brings us to the October 1, 2008
order issued by Associate Judge Molder dismissing Celestine’s adoption petition
with prejudice.  Before we can delve into
the merits of Celestine’s arguments, however, we must first address yet another
preliminary matter: Celestine’s standing to file the petition for adoption.

DFPS contends that Celestine did not
have standing to file her petition for adoption pursuant to section
102.006.  If DFPS is correct,
and Celestine does not have standing, then the trial court’s dismissal of her
petition was proper.  See In
re C.M.C., 192 S.W.3d 866, 870 (Tex. App.—Texarkana 2006, no pet.).  Section 102.006, entitled “Limitations on Standing,” provides
in pertinent part that if the parent-child relationship between the child and
every living parent of the child has been terminated, an original suit may not
be filed by “a family member or relative by blood, adoption, or marriage of
either a former parent whose parent-child relationship has been terminated or
of the father of the child.”  Tex. Fam. Code Ann. § 102.006(a)(3) (Vernon 2008). 
These limitations, however, do not apply if the petitioner “has a
continuing right to possession of or access to the child under an existing
court order” or “has the consent of the child’s managing conservator, guardian,
or legal custodian to bring the suit.”  Tex. Fam. Code Ann. § 102.006(b)(1)–(2) (Vernon 2008).

In the present case, the parental
rights of all of the children’s parents were terminated on August 29,
2006.  Celestine, who claims to be
related to at least one parent of two or more of the children, filed an original
petition seeking to adopt all four of the children.  Although DFPS had placed the children with
Celestine while the termination proceeding was pending, it is undisputed that
the children were removed from Celestine’s home in December 2006 and that
Celestine did not have a continuing right to possession of or access to the
children under a court order at the time she filed her original petition for
adoption in May 2007.  It is also
undisputed that Celestine did not have the consent of the children’s managing
conservator, DFPS, to file this petition for adoption.[10]  Thus, under a plain reading of section
102.006, Celestine does not have standing to initiate a suit for adoption, at least with respect the children to whom she is
related.  See Tex. Fam. Code Ann.
§ 102.006(a)(3).

The nature and existence of
Celestine’s familial relationship with respect to each of the four children,
however, cannot be determined from the appellate record.  Accordingly, we are unable to determine
whether Celestine actually has standing to file her petition.  However, even if we assume that Celestine has
standing with respect to one or more of the children, the trial court’s
dismissal of her petition for adoption would still be proper.  See
generally Laidlaw Waste
Sys.(Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex. 1995) (assuming that petitioner had standing and
affirming summary judgment against petitioner); see also O’Quinn v. State Bar of Tex., 763 S.W.2d 397, 403
(Tex. 1988) (assuming that party had standing in order to
decide that challenge lacked merit).  

Merits
of Dismissal

On appeal, Celestine raises three
challenges to the dismissal of her petition. 
Specifically, Celestine contends that the trial court committed reversible error (1) by allowing the ad litem to present an oral motion to dismiss her petition for
adoption in violation of Texas Rule of Civil Procedure 90; (2) by ruling that the child must reside with
the prospective adoptive parent for six months prior to adoption pursuant to
section 162.001, when the applicable six-month requirement was actually set
forth by section 162.009; and (3) by ruling that it would not grant a hearing
pursuant to section 162.010 to determine whether or not DFPS was withholding
its consent to the adoption.

In her first issue, Celestine alleges
that the trial court committed reversible
error by allowing the ad litem to present an oral
motion to dismiss her petition for adoption in violation of Texas Rule
of Civil Procedure 90.  See Tex.
R. Civ. P. 90 (“Every
defect, omission or fault in a pleading either of form or of substance, which
is not specifically pointed out by exception in writing and brought to the
attention of the judge in the trial court before the . . . judgment is signed,
shall be deemed to have been waived by the party seeking reversal on such
account . . . .”)  The ad litem’s argument, however, was that, having acknowledged
that she did not meet a statutory six-month residency requirement,
Celestine was not eligible to adopt the children.  The ad litem never
alleged that Celestine failed to plead the six-month requirement, nor did he
allege the existence of any defect, omission, or fault with respect to
Celestine’s pleadings.  Accordingly, we
conclude that the ad litem was not raising a pleading
defect in his motion, and therefore he was not required to raise his challenge
in writing pursuant to Texas Rule of Civil Procedure 90.  

We overrule Celestine’s first issue.

In her second
and third issues, Celestine argues that the trial court committed reversible
error when it (1) ruled that a child must reside with the prospective adoptive
parent for six months prior to the adoption pursuant to section 162.001, when
the applicable six-month requirement was actually set forth by section 162.009,
and (2) denied her request for a hearing pursuant to section 162.010 because it
would not find that DFPS was withholding its consent without good cause.  Any statements the trial court made during
the hearing, however, are irrelevant for purposes of our review of the
propriety of the court’s dismissal of Celestine’s petition.  

Regardless of what the trial court
may have said, or what the parties may have argued at the hearing, the trial
court did not prepare any findings of fact or conclusions of law in this case,
nor did it specify which ground it was relying upon when it ordered the
dismissal of Celestine’s adoption petition. 
See In re W.E.R., 669 S.W.2d 716, 716 (Tex. 1984); Richardson
v. Johnson & Higgins of Tex., Inc., 905 S.W.2d 9, 11 (Tex. App.—Houston
[1st Dist.] 1995, writ denied).  In such cases, the judgment of the
trial court implies all necessary fact findings in support of the judgment, and we will affirm the judgment of
the trial court if it can be upheld on any legal theory that finds support in
the evidence.  See In re W.E.R., 669
S.W.2d at 717.  In
determining whether some evidence supports the judgment and the implied
findings of fact, “it is proper to consider only that evidence most favorable
to the issue and to disregard entirely that which is opposed to it or
contradictory in its nature.”  Renfro
Drug Co. v. Lewis, 235 S.W.2d 609, 613 (1950) (quoting Austin v. Cochran, 2 S.W.2d 831, 832 (Tex. Comm’n
App. 1928)).  Accordingly, we may affirm
the judgment if there is at least some evidence in the record supporting
dismissal of Celestine’s petition under either section 162.009 or section 162.010,
regardless of any oral statements made by the trial court judge.  See In re W.E.R., 669 S.W.2d at 716 (stating
that trial court judge’s oral statements may not be considered as
substitute for findings of fact
or conclusions of law). 

The trial court must grant an
adoption if it finds that the requirements for adoption have been met and the
adoption is in the best interests of the child. 
See Tex. Fam. Code Ann. § 162.016(b) (Vernon 2008).  Section 162.009 (“Residence with Petitioner”)
and section 162.010 (“Consent Required”) are two such
statutory prerequisites.  See Tex.
Fam. Code Ann. §§ 162.009,
162.010 (Vernon 2008). 
Pursuant to section 162.009(a), a court may not grant an adoption until
the child has resided with the petitioner for at least six months.  See Tex. Fam. Code Ann. § 162.009(a).  On the request of the petitioner, the court
may, however, waive this six-month requirement if it finds that waiver is in
the child’s best interest.  See Tex.
Fam. Code Ann. § 162.009(b).  Celestine
alleges that because section 162.009(b) allows the trial court to waive the
six-month requirement if it finds that waiver is in the child’s best interest,
she was therefore entitled to an opportunity to present evidence and be heard
on the issue of whether waiver was indeed in the children’s best interest.  Although she has not directed us to any legal
authority supporting her position, we will nonetheless address Celestine’s argument in the interests
of justice and judicial economy.  See
generally Tex. R.
App. P. 38.1(i); Fredonia State Bank v. Gen. Am. Life Ins.
Co., 881 S.W.2d 279, 284 (Tex.
1994); Blanks v. Liberty Mut. Fire Ins. Co., 196 S.W.3d 451, 452 (Tex. App.—Dallas 2006, pet.
denied).   

We have been unable to locate any
appellate court cases analyzing a trial court’s dismissal of a petition for
adoption under section 162.009 or its predecessor section 14.06.  However, due to the discretionary nature of the trial court’s determination and the
similarity to review of best interests
findings in other family law contexts, we conclude that the proper standard of
review in such instances is abuse
of discretion.  See In
re Jane Doe 2, 19 S.W.3d 278, 281–82 (Tex. 2000); see also In re W.E.R., 669 S.W.2d at 716 (“The
granting or denial of an adoption is based on a determination of the best
interest of the child.  The decision as
to whether or not to grant an adoption is within the discretion of the trial
court, which may not be set aside except for abuse.”) (citation
omitted).  A trial court does not abuse
its discretion if some evidence of a substantive and probative character
supports the trial court’s decision.  In re Gonzalez, 993 S.W.2d 147, 155 (Tex. App.—San Antonio
1999, no pet.)  

In the present case, the 313th
District Court—the court of continuing and exclusive jurisdiction—issued the
final decree terminating the parental rights of DDD’s, DJD’s, JID’s, and CRD’s
biological parents and appointing the DFPS as the children’s sole managing
conservator.  During the course of the
termination suit, the trial court was presented with evidence of the biological
mother’s long history of drug abuse, as well as her extensive history with DFPS
dating back to 1985.  The trial court
also learned that the agency had already successfully petitioned to have the
biological mother’s parental rights terminated with regard to her three oldest
children.  The record also reflects that
after DFPS removed the children from Celestine’s home in December 2006, the
313th District Court held a hearing to determine whether the removal was
proper.  During that hearing, both
Celestine and DFPS had an opportunity to present evidence and argue their
respective cases.  The record also
reflects that a caseworker testified during that hearing that she removed the
children after she visited Celestine’s home and found the biological mother
there.  According to the caseworker, she
had previously told Celestine that the biological mother could not have contact
with the children.  Celestine also
testified at the hearing.  According to
Celestine, she was not at home when the caseworker visited, and her daughter
had allowed the biological mother to see the children, not her.  The children were never returned to Celestine,
and remain in foster care.  In light of
these prior proceedings, we conclude that some evidence of a substantive and
probative character supports the trial court’s implicit finding that waiver of
the six-month requirement was not in the children’s best interest.

As for Celestine’s contention that
she should have been allowed an opportunity to present additional evidence
demonstrating why wavier of the residency requirement was in the children’s
best interest, we conclude that this argument is without merit.  First, unlike other provisions of Chapter 162
of the Family Code, section 162.009 does not expressly require the trial court
to hold a hearing specifically on this issue before it determines whether
wavier of the six-month requirement is in the children’s best interest.  Compare
Tex. Fam. Code Ann. §
162.009(b) with Tex. Fam.
Code Ann. § 162.010(a) (requiring trial court to hold hearing to
determine whether managing conservator is refusing or has revoked its consent
to the adoption without good cause). 
Second, it is apparent from the record that the October 2008 hearing was
not the first time Celestine’s fitness to care for the children was called into
question.  The trial court had already
heard substantial testimony regarding the reasons why DFPS removed the children
from Celestine’s home in December 2006. 
During that hearing Celestine had ample opportunities to present her
side of the story and argue why the children should be returned to her care—a
factor which necessarily implicates the overriding goal in SAPCR cases, the
best interest of the children involved. 
Celestine is now asking for yet another opportunity to argue her
case.  We see no reason why Celestine should
be allowed to have yet another bite at the proverbial apple.  

Having determined that the trial
court’s dismissal of Celestine’s petition was proper under section 162.009, we
need not address whether the trial court would also have been correct in
dismissing her petition under section 162.010. 


We overrule Celestine’s second and
third issues.

Dismissal
with Prejudice

Celestine also challenges the trial
court’s dismissal of her petition with prejudice.  Celestine, however, does not allege any facts
or direct us to any supporting legal authority or evidence in the record which would
allow us to conclude that dismissal with prejudice was improper in her case.  

Having concluded that the trial
court’s dismissal of Celestine’s petition was proper under section 162.009, we
must now determine whether a dismissal with prejudice was proper.  Dismissal with prejudice
constitutes an adjudication on the merits and operates as if the case had been
fully tried and decided.  Mossler
v. Shields, 818 S.W.2d 752, 754 (Tex. 1991).  Here, the trial court made an implicit finding
that waiver of section 162.009’s six-month residency requirement was not in the
children’s best interest.  A finding as
to the “best interests” of a child goes to the very heart of the merits in any
adoption proceeding.  See Tex.
Fam. Code Ann. § 162.016(b) (Vernon 2008) (stating that finding
that adoption is in best interests of child is prerequisite to granting of any
petition for adoption).  Accordingly, the
trial court’s dismissal of Celestine’s petition under section 162.009 was a
dismissal on the merits, and, therefore, subject to dismissal with prejudice.

We overrule Celestine’s challenge to
the dismissal of her petition with prejudice.

Denial
of Motion for New Trial

In her notice of appeal, Celestine
states that she is appealing both the dismissal of her petition with prejudice,
and the trial court’s denial of her motion for new trial.  Celestine, however, does not argue on appeal
that the trial court erred, or even abused its discretion, when it denied her
motion for new trial.  She has not
provided us with any authority on this issue. 
We will nonetheless address Celestine’s argument in the interests of judicial economy and justice.  See
generally Tex. R. App. P.
38.1(i); Fredonia
State Bank, 881
S.W.2d at 284; Blanks, 196
S.W.3d at 452. 

We review a trial court’s denial of a
motion for new trial for abuse of discretion. 
Dir., State Employees Workers’ Comp. Div. v. Evans,
889 S.W.2d 266, 268 (Tex. 1994). 
A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law, or if it clearly fails to correctly analyze or apply
the law.  In re
Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005).  In her motion to the trial court, Celestine
argued that she was entitled to a new trial because the court’s legal basis for
dismissal was erroneous.  Having
determined that the trial court did not abuse its discretion—much less commit
reversible error—when it dismissed Celestine’s petition with prejudice under
section 162.009, we cannot say that the trial court abused its discretion when
it denied Celestine’s motion for new trial. 


We overrule Celestine’s challenge to
the denial of her motion for new trial. 

 

 

 

CONCLUSION

We affirm
the judgment of the trial court.

 

 

 

 

                                                          Evelyn
Keyes

                                                          Justice

 

Panel consists of Justices Keyes,
Hanks, and Higley.  











[1]           According
to the affidavit attached to DFPS’s Original Petition for Protection, the
children’s biological mother—a long-time crack cocaine abuser—had an extensive
history with the agency dating back to 1985. 
Over the course of the previous twenty years, the agency had
successfully petitioned to have the mother’s parental rights terminated with
regard to her three oldest children—one of the children had sustained multiple
bone fractures prior to his removal from the mother’s care.  Apparently undeterred, the mother proceeded
to have four more children—DDD, DJD, JID, and CRD.  Although DFPS became involved with the family
in 2004 when JID tested positive for cocaine at the time of his birth, the children
were allowed to remain in the care of the mother’s “long-term paramour,”
Nathaniel Davis.  When the biological
mother tested positive for cocaine after the birth of her seventh child in
2006, DFPS removed the four remaining children from her care and successfully
petitioned to have her parental rights terminated.





[2]           The
record indicates that Celestine objected to the children’s removal from her
home and the 313th District Court held a hearing on the issue.  During that hearing, a caseworker testified
that she removed the children after she visited Celestine’s home and found the
biological mother there.  The caseworker
testified that she had previously told Celestine that the biological mother
could not have contact with the children. 
Celestine claimed that she was not at home when the caseworker visited
and that her daughter had allowed the biological mother to see the children,
not her.  





[3]           Despite
having claimed to be a maternal aunt to two of the children in her petition,
Celestine’s brief refers to her as the “paternal aunt of three of the four
children”, the “maternal aunt” and the “paternal grandmother.”  Although it is certainly not dispositive with
regard to her relationship to the children, the final termination decree lists
Clarence Celestine as the biological father of the two youngest children—JID
and CRD.





[4]           See Tex.
Fam. Code Ann.
§ 102.013(b) (Vernon 2008) (requiring clerk to assign new docket number to
any petition for adoption).





[5]           All of
Celestine’s amended petitions were combined with a request from a second
petitioner, Nathaniel Davis, to terminate “child support” payments he was making
to an unidentified person, presumably for the children’s benefit.  Other than stating that Davis was paying
child support for the children, neither amended petition identified Davis’
relationship to the children, if any.  An
affidavit attached to the Original Petition for Protection filed in the
termination case, however, indicates that the children had lived with Davis,
the children’s biological mother’s “long-term paramour.”  According to DFPS, Celestine later “orally
abandoned [her] pleadings that relate to Nathaniel Davis and child
support.”  Nathaniel Davis is not a party
to this appeal. 





[6]           Although
evidence in the record indicates that a hearing on DFPS’s motion to strike was
held, a copy of the transcript from that hearing is not included in the
appellate record.  The record indicates
that the trial court denied DFPS’s motion because it found that Celestine was a
person who had “substantial past contact with the child[ren]
sufficient to warrant standing” to petition for their adoption, by virtue of
the fact that the children had resided with her for five and a half months
before they were removed by DFPS.  See Tex.
Fam. Code Ann. § 102.005(5)
(Vernon Supp. 2009).





[7]           Celestine
also (mistakenly) argues that a lone docket entry is the only evidence the
309th District Court dismissed her petition; according to Celestine,
the 309th never signed an order dismissing her petition.  The presiding judge of the 309th District
Court did indeed sign an order dismissing Celestine’s petition.  Copies of the order are included in the
clerk’s record on appeal.





[8]          Although
the Reporter’s Record indicates that the hearing was held on October 14, 2008,
appellant’s motion for new trial (filed October 7, 2008), which was filed as a
direct result of the final hearing, indicates that the hearing was actually
held on October 1, 2008.





[9]           The
reporter’s record suggests that the trial did not go forward on October 1, 2008
because DFPS informed Associate Judge Molder that it needed more time to
properly notice to all necessary parties and it requested a new trial setting
in November or December.  





[10]         Celestine does not challenge DFPS’s
refusal to consent to standing under section 102.006.  She does, however, challenge DFPS’s refusal
to consent to the adoption under section 162.010.  Pursuant to section 162.010, the children’s
managing conservator, DFPS, must file a written consent to the adoption.  Tex. Fam. Code Ann. § 162.010(a)
(Vernon 2008).  The
court, however, may waive the consent requirement if it finds that the consent
has been refused or revoked without good cause. 
Id.  Furthermore, a “hearing on the issue of
consent shall be conducted by the court without a jury.”  Id.  Although section 162.010 requires the court
to hold a hearing to determine whether DFPS has refused or revoked its consent
to the adoption without good cause, section 102.006 contains no such provisions
with respect to standing.  Cf. In re A.M. and B.M., No.
04-09-00069-CV, 2010 Tex. App. LEXIS 1250, at *15–17, 2010 WL 653746, at *5–6
(Tex. App.—San Antonio Feb. 24, 2010, pet. filed) (refusing to import section
162.010’s consent to adoption safeguards into section 102.006; holding trial
court did not err in refusing to hear evidence regarding whether DFPS
wrongfully withheld consent under section 102.006, because no hearing was
required by that section and DFPS’s motivations were irrelevant with respect to
issue of standing).